JESSICA K. PRIDE (SBN 249212)
jpride@pridelawfirm.com
DANTE PRIDE (SBN 262362)
dpride@pridelawfirm.com
THE PRIDE LAW FIRM
2831 Camino Del Rio S., Suite 104
San Diego, CA 92108
Telephone: (619) 516-8166
Facsimile: (619) 785-3414
Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| A.R.,<br><br>          Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA (FEDERAL BUREAU OF PRISONS); RAY J. GARCIA; ROSS KLINGER; JAIME PEREZ; and DOES 1-25, inclusive,<br><br>          Defendants. | CASE NO.<br><br>**COMPLAINT**<br>**DEMAND FOR JURY TRIAL** |

### INTRODUCTION

1.     Beginning in approximately 2020, Defendant ROSS KLINGER ("KLINGER"), a correctional officer at Federal Correctional Institution – Dublin ("FCI Dublin") owned and operated by Defendant the United States of America (Federal Bureau of Prisons) ("United States"), sexually abused Plaintiff A.R., a minimum-security inmate, in violation of federal and state law.

2.     In approximately 2020, Defendant JAIME PEREZ ("PEREZ"), a garage foreman at FCI Dublin, repeatedly subjected Plaintiff A.R., a minimum-

security inmate incarcerated there, to sexual abuse in violation of federal and state law.

3.      Congress enacted the Prison Rape Elimination Act in 2003, 34 U.S.C. § 30301, *et seq.* ("PREA") to establish national standards for preventing precisely this kind of sexual abuse from happening to federal inmates. Under PREA, the U.S. Department of Justice promulgated detailed regulations that provide precise procedures that prisons must follow. The Federal Bureau of Prisons ("BOP") adopted PREA policies in response to these regulations.

4.      Defendants KLINGER and PEREZ repeatedly subjected Plaintiff to sexual abuse. In doing so, Defendant violated Plaintiff's Constitutional rights and California law on gender violence, sexual assault, and common law on battery.

5.      Defendant RAY J. GARCIA ("GARCIA") was the associate warden at FCI Dublin between December 2018 and November 2020, and the warden at FCI Dublin from November 2020 to July 2021 – a majority of the period that Plaintiff was being abused by Defendants KLINGER and PEREZ. As the warden, GARCIA was responsible for safekeeping, care, protection, discipline, programming, and release of inmates incarcerated at FCI Dublin. GARCIA was also responsible for hiring, training, and supervising/managing staff, and determining operating procedures and policies.

6.      Defendant GARCIA led training on the Prison Rape and Elimination Act and chaired the audit of FCI Dublin under the PREA. Thus, the man responsible for reporting incidents to the government and teaching inmates how to report rape was in fact a serial rapist of inmates.

7.      Defendant GARCIA knew or should have known that the other correctional officers under his supervision were sexually assaulting inmates.

8.      Defendant GARCIA knew or should have known that inmates complained about the assaults and were subjected to retaliation. PREA guidelines and FCI Dublin policies and procedures required all inmate complaints of sexual

assault and sexual abuse filed or reported internally be reported to Defendant GARCIA. During GARCIA's tenure, complaints of sexual assaults of inmates by correctional officers and/or staff were reported.

9. Defendant GARCIA failed to protect the inmates and turned a blind eye. Such behavior set the tone for rape culture at FCI Dublin, garnering Garcia and his subordinate correctional officers and employees the nickname – "the Rape Club."

10. As a result of Defendants' actions, Plaintiff suffered numerous emotional injuries and incurred severe personal injuries, which continue to affect her today.

11. Plaintiff brings this civil action and asserts claims against KLINGER, PEREZ, GARCIA, and DOES 1-25, inclusive, under the Eighth Amendment's Cruel and Unusual Punishment Clause (Excessive Force), and California's gender violence and sexual assault statutes (Civil Code §§ 52.4 and 1708.5); (2) against PEREZ for California common law (Battery); (3) against GARCIA and DOES 1-25, inclusive, under the Eighth Amendment's Cruel and Unusual Punishment Clause (Deliberate Indifference); (4) against the United States under the Fifth Amendment's Due Process Clause (Procedural Due Process); and (5) against the United States under the Federal Tort Claims Act (28 U.S.C. §§ 1346(b), 1671-2680) ("FTCA") for various tort claims against all Defendants arising under California common law committed within the course and scope of their federal office or employment.

12. For these violations, Plaintiff seeks nominal, compensatory, and punitive damages, attorneys' fees and costs, and any other relief that the Court deems appropriate.

## JURISDICTION AND VENUE

13. Plaintiff's claims arise under the United States Constitution, California statutory law, California common law, and the FTCA. The Court has

diversity jurisdiction over Plaintiff's entire action under 28 U.S.C. § 1332 because Plaintiff and Defendants are diverse in citizenship and more than $75,000 is in controversy. The Court also has federal question jurisdiction over Plaintiff's Constitutional claims and FTCA claims (which have been administratively exhausted) under 28 U.S.C. § 1331. And the Court has supplemental jurisdiction over Plaintiff's California statutory and common-law claims under 28 U.S.C. § 1367 because these state-law claims arise from a common nucleus of operative fact with Plaintiff's federal question claims.

14. The Court also has personal jurisdiction over Defendants. The Court has general jurisdiction over Defendants because, on information and belief, each Defendant is a citizen of, and domiciled in, California. The Court has specific jurisdiction over Defendants because they committed the actions and omissions forming the basis for each claim against them in California.

15. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) and 28 U.S.C. § 1402(b). As noted above, Defendants' actions and omissions that give rise to Plaintiff's claims all occurred in this District, at FCI Dublin, located at 5701 8th St., Dublin, California 94568.

## INTRADISTRICT ASSIGNMENT

16. Pursuant to Civil Local Rule 3-29(d), Plaintiff's action is properly assigned to the San Francisco Division of this District because the action arises from actions and omissions taken in Alameda County, California, where FCI Dublin is located.

## PARTIES

17. Plaintiff is an individual and citizen incarcerated in Dublin, California. During the relevant period, Plaintiff was incarcerated at FCI Dublin in Dublin, California.

18. Upon information and belief, Defendant KLINGER is an individual and citizen of California, where he is domiciled. During the relevant period,

KLINGER worked as a correctional officer at FCI Dublin in the Bureau of Prison's (BOP's) employment. While performing the acts and omissions that Plaintiff alleges in this complaint, KLINGER was acting within the scope of his official employment, or with the BOP's permission and consent.

19.     Upon information and belief, Defendant PEREZ is an individual and citizen of California, where he is domiciled. During the relevant period, PEREZ worked as a correctional officer and garage foreman at FCI Dublin in the Bureau of Prison's (BOP's) employment. While performing the acts and omissions that Plaintiff alleges in this complaint, PEREZ was acting within the scope of his official employment, or with the BOP's permission and consent.

20.     Upon information and belief, Defendant GARCIA is an individual and citizen of California, where he is domiciled. During the relevant period, GARCIA worked as the associate warden at FCI Dublin in the BOP's employment. While performing the acts and omissions that Plaintiff alleges in this complaint, GARCIA was acting within the scope of his official employment, or with the BOP's permission and consent.

21.     Defendant United States is a governmental entity. During the relevant period, the United States, through the BOP, a federal agency, was in possession and control of FCI Dublin, a minimum-security federal prison located in Dublin, California. The United States has waived sovereign immunity as to Plaintiff's tort claims against Defendants, pursuant to FTCA, 28 U.S.C. § 2674.

22.     Plaintiff is ignorant as to the true names, identities, and capacities of Defendants DOES 1 through 25, inclusive. Therefore, Plaintiff sues these Defendants under the fictitious designation of DOES 1 through 25. Plaintiff will amend this Complaint once their identities have been ascertained as well as facts giving rise to their liability.

23.     Defendants Does 1-25, individually and in their official capacities, at all times relevant herein, were correctional officers and/or employees for the BOP,

acting in their official capacity. These defendants include correctional officers in supervisory positions that participated in training KLINGER, PEREZ, GARCIA and other employees, in the supervision of KLINGER, PEREZ, GARCIA, and other employees, and in reporting incidents of sexual abuse to the BOP.

## STATEMENT OF FACTS

**A.    PREA regulations provide mandatory procedures for preventing, reporting, investigating, and responding to reports of staff sexual abuse of an inmate.**

24.    PREA regulations require the BOP to have a strict "written policy mandating zero tolerance toward all forms of sexual abuse and sexual harassment and outlining the [BOP's] approach to preventing, detecting, and responding to such conduct," which the BOP has adopted.[1]

25.    PREA regulations also comprehensively mandate that the BOP and its correctional staff follow certain policies and procedures when an inmate has allegedly suffered sexual abuse.

26.    First and foremost, the BOP "shall require all staff to report immediately" "any knowledge, suspicion, or information regarding an incident of sexual abuse" and "staff neglect or violation of responsibilities that may have contributed to an incident or retaliation."[2] "Apart from reporting to designated supervisors or officials, staff shall not reveal any information related to a sexual abuse report to anyone other than to the extent necessary, as specified in agency policy, to make treatment, investigation, and other security and management decisions."[3]

---

[1] *See* BOP Program Statement No. 5324.11, at 15 (Jan. 6, 2014); 28 C.F.R. § 115.11(b), (c).
[2] 28 C.F.R. § 115.61(a).
[3] *Id*. § 115.61(b).

27.     Regardless of whether a report of sexual abuse is made, if an inmate is "subject to a substantial risk of imminent sexual abuse, [BOP employees] shall take immediate action to protect the inmate."[4]

28.     Upon receiving a report of inmate sexual abuse, the facility is required to report it to a designated internal investigator[5] and conduct an administrative or criminal investigation.[6] A criminal investigation is required for all allegations of inmate sexual abuse, "unless the allegation does not involve potentially criminal behavior."[7] All such referrals must be documented.[8]

29.     Given the high risk for retaliation against a reporter or victim, the BOP is required to "protect all inmates and staff who report sexual abuse or sexual harassment or cooperate with sexual abuse or sexual harassment investigations from retaliation by other inmates or staff and shall designate which staff members or departments are charged with monitoring retaliation."[9] A prison's PREA compliance manager must monitor an inmate sexual abuse victim for 90 days after  a report of abuse is filed to ensure that he or she is not retaliated against by prison staff.[10]

30.     The BOP must also provide ongoing access to mental healthcare to all inmates who have been victimized by sexual abuse while detained in the facility.[11]

31.     The BOP is required to train every employee who may have contact with inmates to comply with the above PREA regulations and must "document, through employee signature or electronic verification, that employees understand

---

[4] *Id*. § 115.62.
[5] *Id*. § 115.61(e).
[6] *Id*. § 115.22(a); *see also Id*. § 115.71.
[7] *Id*. § 115.22(b)
[8] *Id*.
[9] *Id*. § 115.67(a).
[10] 28 C.F.R. § 115.67(c); BOP Program Statement No. 5324.11, at 44 (Jan. 6, 2014).
[11] *Id*. § 115.83(a), (b), (h).

the training they have received."[12] In addition to this general training, specialized training is required for sexual abuse investigators.[13]

32.     Where an investigation finds that a staff member has engaged in sexual abuse, the presumptive disciplinary sanction is termination, and some form of discipline is required.[14]

33.     Finally, all documentation relating to an allegation of inmate sexual abuse must be maintained[15] and securely retained for at least ten years after the date of initial collection.[16]

34.     Defendants repeatedly violated these PREA regulations.

**B.     KLINGER routinely subjected Plaintiff to sexual abuse.**

35.     In approximately June of 2020, KLINGER, a correctional officer responsible for supervising inmates, began his sexual harassment and abuse of Plaintiff. KLINGER began preying upon Plaintiff when she worked on the recycle team at FCI Dublin. KLINGER would bring her special gifts like Starbucks and fast food. KLINGER also came into work drunk on multiple occasions. Through his authoritative position over Plaintiff, and in violation of her civil and constitutional rights, KLINGER began sexually abusing Plaintiff.

36.     During Plaintiff's shifts in the garage, KLINGER would attempt to flirt with her. For example, in approximately July of 2020, KLINGER told Plaintiff that he was dreaming of her, and stated, "In my dreams you are very fucking flexible." Plaintiff told former prison safety administrator, John Bellhouse, what Klinger said about his dream, and he told her to "ignore him."

37.     In approximately August of 2020, KLINGER told Plaintiff that if she gave him the time of day and began a sexual relationship with him, he would drop all of his affairs with other women in the facility and remain loyal to her.

---

[12] *Id.* § 115.31.
[13] *Id.* § 115.34.
[14] *Id.* § 115.76.
[15] *Id.* § 115.87(a), (d).
[16] *Id.* § 115.89(a), (d).

38.     KLINGER's sexual aggression towards Plaintiff advanced when he told her, "I really want to fuck you and I'm letting you know in advance that I'm pretty rough on the clit."

39.     Plaintiff was terrified to report KLINGER because he was simultaneously abusing other inmates. For example, in approximately May of 2020, Plaintiff witnessed KLINGER force another inmate, M.R., into a "relationship" with him. On at least ten different occasions, Plaintiff watched KLIGNER bring M.R. into a Conex box to have sex. One day in particular, Plaintiff watched M.R. exit the Conex box with KLIGER's semen on her clothes. That day is very vivid for Plaintiff because Plaintiff was in charge of doing the laundry for the team, and she was forced to wash M.R.'s semen-stained shirt. Plaintiff was afraid to report KLINGER's behavior because she feared retaliation. Because KLINGER would not leave Plaintiff alone, she was forced to quit her job on the recycling team.

40.     The sexual encounters and verbal abuse by KLINGER took place on multiple occasions and lasted for several months.

41.     KLINGER was able to sexually abuse Plaintiff through active and passive coercion. KLINGER's interactions with Plaintiff were unwelcome, offensive, and nonconsensual.

42.     KLINGER's conduct is an example of some of the cruel and unusual punishment that Plaintiff endured at FCI Dublin.

**C.     PEREZ routinely subjected Plaintiff to sexual abuse.**

43.     On approximately September 3, 2020, Plaintiff began working in the garage performing basic maintenance on vehicles. FCI Dublin employee, PEREZ, was the garage foreman. PEREZ spoke in a sexual manner toward Plaintiff and spoke sexually about her private parts. For instance, PEREZ told her, "You have a small chest, but you are still very beautiful."

44.     On one occasion, PEREZ asked Plaintiff to pull up her pants so he could "see better," implying he wanted to see her buttocks.

45.     On another occasion, Plaintiff brought in photos of herself and her family into the garage, and PEREZ touched the photos on Plaintiff's private areas while staring at her. Plaintiff felt terrified.

46.     In another instance, Plaintiff had a miniature flashlight and jokingly told PEREZ that it looked like him because he was a short man. PEREZ responded, "It might be small but it's very effective," referring to his penis.

47.     The sexual abuse worsened when PEREZ began bumping his body into Plaintiff and rubbing his genitals up against her. It continued when a few months after she started working at the garage, Plaintiff was in a golf cart and PEREZ ran his hand up Plaintiff's thigh, causing Plaintiff to slap his hand away.

48.     PEREZ's conduct deeply upset Plaintiff to the point that she would run upstairs to get away from him, but PEREZ would follow her upstairs to apologize.

49.     In or around December of 2021, PEREZ continued to rub Plaintiff's buttocks with his hand, which was unwelcomed, offensive, and a nonconsensual touching. PEREZ told Plaintiff that although he tries, he does not "get any" from her.

50.     In approximately January of 2022, Plaintiff came into work with a ring on her finger, and PEREZ continued to ask her who it was from and told her she was "being a piruja" which means "whore" in Spanish. After that remark, Plaintiff could not handle the mistreatment anymore, so she quit her job in the garage.

51.     Plaintiff wanted to make a complaint about the abuse while she was incarcerated at FCI Dublin, but she was afraid because she witnessed the retaliation that other inmates experienced when they complained.

52.     The sexual encounters and verbal abuse by PEREZ took place on multiple occasions and lasted for several months.

53.     PEREZ was able to sexually abuse Plaintiff through active and passive coercion. PEREZ manipulated and forced Plaintiff into sexual encounters which were unwelcome, offensive, and nonconsensual.

54.     PEREZ's conduct is an example of some of the cruel and unusual punishment that Plaintiff endured at FCI Dublin.

**D.     FCI Dublin is known for its culture of tolerating sexual misconduct.**

55.     These facts are either known to us or are based on information and belief. Throughout the last three decades, the United States (BOP) has repeatedly ignored incidents of sexual misconduct at FCI Dublin. Currently, six employees have been indicted by the Department of Justice for sexual misconduct, three have pled guilty, and nine other employees are on administrative leave pending investigation – the most in U.S. history of the Bureau of Prisons. The following examples are just a fraction of the magnitude of sexual misconduct and violence that transpired at FCI Dublin:

- In 1996, BOP officers took three female inmates from FCI Dublin to a male unit, opened their cell doors, and allowed male inmates to rape them.

- In the late 1990's and early 2000's, four male BOP employees were either convicted or pled guilty to sexually abusing female inmates at FCI Dublin.

- According to the U.S. Senate Report,[17] in the early 2010s, approximately a dozen Dublin employees were removed for their sexual abuse of inmates, "including one who videotaped himself having sex with inmates and stored those tapes in a prison locker. None were arrested."

---

[17] JON OSSOFF & RON JOHNSON, S. REP., SEXUAL ABUSE OF FEMALE INMATES IN FEDERAL PRISONS (2022) (released in conjunction with the Permanent Subcomm. on Investigations December 13, 2022 hearing).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

- In 2019, an FCI inmate, Victoria Peterson, filed a suit against Officer William Martinez for abusing his power and using excessive force to have sex with her. She also sued the warden at the time, Wiley Jenkins, for failing to take disciplinary action against Martinez and allowing him to continue working at FCI Dublin.

- In 2019, inmate L.I. filed a claim against former FCI Dublin chaplain James Highhouse for sexual assault. Highhouse started having unwanted physical contact with L.I. in May of 2018, and although he was ultimately charged with abuse of L.I., prosecutors said he engaged in predatory conduct with at least six women from 2014 to 2019. Highhouse pleaded guilty and was sentenced to seven years in prison.

- In 2020, inmate D.V. was pressured into an ongoing sexual relationship with FCI Dublin Correctional Officer Enrique Chavez. CO Chavez kissed her, touched her bare breasts and vagina, and had D.V. touch his penis. CO Chavez was known to bring inmates into the kitchen closet for "meetings."

- In 2021, CO Enrique Chavez sexually harassed another inmate, J.C., while was working in the kitchen. He would make comments like, "You're going to suck my dick right now." CHAVEZ promised J.C. a bonus in return for sexual favors, but she never performed sexual favors for him. Chavez would brush his erect penis up against J.C. and said "look, it's hard for you."

- It was common for male employees at FCI Dublin to stare at the inmates while they were naked in the shower. For example, inmate Y.S. witnessed CO Sergio Saucedo watching her in the shower between May of 2021 and October of 2021.

- CO Sergio Saucedo also forced inmate C.C. to undress in front of him multiple times.

- CO Darrell Smith also known as "Dirty Dick Smith" watched another inmate J.A. in the shower. He would also stand outside her cell window and watch her. He was notoriously perverted. He would stare at her buttocks and say "mmm mmm mmm." She was also sexually assaulted by CO Isaac Venegas when he rubbed his penis up against her back and buttocks.

- Another inmate, A.J., suffered sexual abuse at FCI Dublin between approximately September 2021 and May of 2022. When A.J. arrived, Paramedic Fraser Cohen grabbed her breasts with no chaperone. Later throughout her incarceration, CO Nicholas Ramos consistently watched her in the shower, and both CO Ramos and CO Phillips made her strip, cough, and squat for cavity searches.

- From April through October 2020, Defendant KLINGER manipulated inmate M.R. into performing oral sex and engaging in forced sexual intercourse.

- Inmate D.S. was forced to engage in oral sex with nurse Jeff Wilson.

- Jeff Wilson forced inmate L.A. to show him her breasts. L.A. was also sexually harassed by CO Saucedo when he forced her to bend over in front of him.

- C.O. Saucedo sexually harassed inmate L.C. by making sexual noises at her and squirting shampoo on her clothing, mimicking ejaculation. On another occasion, CO Saucedo ripped open the shower curtain while L.C. was showering, causing her to fall over so he could see her naked body.

- Another inmate went to TDY (temporary duty) medical employee Jay Alexander (exact name unknown) for medical treatment on her back, and he pulled her underwear down and touched her buttocks and in between her inner thighs.

- Inmate G.M. was preyed upon by Disciplinary Hearing Officer (DHO) David Perez for over three years. David Perez would "make out" with G.M., touch her breasts, caress her, and make her believe he was her boyfriend. When G.M. was on probation, David Perez met up with her and had her touch his genitals.

- Another kitchen foreman, O'Connor (full name unknown) touched inmate N.P.'s buttocks and brushed his hand over her chest.

- CO Jones would tell inmate J.C. to "suck his dick" and he would tell her to "get on your knees." CO Jones would grab his genitalia and tell her to "look."

56.     Upon information and belief, at least 22 FCI Dublin employees, including those who courageously reported and/or acted to prevent instances of sexual violence, have been reassigned to other prisons. This reassignment got the attention of Congresswoman Jackie Speier, who wrote a letter to the new Director of the Federal Bureau of Prisons, Colette Peters, requesting information about FCI Dublin's "culture of rampant sexual misconduct and subsequent cover-ups."[18]

57.     In December 2022, the United States Senate reported on the Permanent Subcommittee on Investigations findings from its investigation into sexual abuse of female prisoners in custody of the BOP. The report found that in at least four BOP facilities (FCI Dublin being one of them), multiple women endured ongoing sexual abuse for months or years. The report's conclusion stated, "BOP failed to detect or prevent sexual abuse of incarcerated women by male BOP employees. The agency's poor implementation of the audit program and reporting mechanisms required by PREA allowed serious, repeated sexual abuse in at least four facilities to go undetected. BOP's internal affairs practices have failed to hold employees accountable, and multiple admitted sexual abusers were not criminally prosecuted as a result. Further, for a decade, BOP failed to respond to this abuse or implement agency-wide reforms. Moving forward, BOP should consider the Subcommittee's findings as it works to implement changes to how it handles sexual abuse of female prisoners by male BOP employees."[19]

58.     As a result of his misconduct, Defendant KLINGER was charged and pled guilty to federal criminal charges for Sexual Abuse of a Ward (18 U.S.C. § 2243(b)) stemming out of his conduct against two other inmates and he is awaiting sentencing.

---

[18] Fox2KTVU Reporter Lisa Fernandez: https://www.ktvu.com/news/dublin-prison-guard-says-she-was-forced-out-for-reporting-abuse.

[19] JON OSSOF & RON JOHNSON, S.REP., SEXUAL ABUSE OF FEMALE INMATES IN FEDERAL PRISONS (2022) (released in conjunction with the Permanent Subcomm. on Investigations December 13, 2022 hearing).

1    59.    CO John Bellhouse currently faces a six-count Grand Jury indictment

2  for sexually abusing female inmates. His jury trial is set for June 5, 2023. CO

3  Chavez was arrested, pled guilty, and in February of 2023, he was sentenced to 20

4  months in prison for sexually abusing an inmate. Additionally, in March of 2022,

5  COs Saucedo and Nicholas Ramos were placed on leave as a result of sexual

6  misconduct allegations. CO Ramos committed suicide on August 21, 2022.

7    60.    On April 23, 2023, a grand jury indicted CO Darrell Smith with 12

8  counts of sexual abuse of a ward, aggravated sexual abuse, and abusive sexual

9  contact. Upon information and belief, CO Smith had sex with at least two

10  inmates, and touched at least three inmates' buttocks and breasts. At least four

11  other inmates were targeted and terrorized by CO Smith when he watched them

12  undress.

13    61.    Defendant GARCIA was found guilty of three counts of having sexual

14  contact with an incarcerated person, four counts of abusive sexual contact and one

15  count of lying to the FBI. GARCIA was sentenced to 5 years and 10 months in

16  prison. At the sentencing hearing, GARCIA accepted guilt and stated, "I stand

17  before you a broken man…. I couldn't be more ashamed. I couldn't be more sorry."

18    62.    The USA failed to provide the sexual abuse victims with counseling

19  services or victim advocates. The victims were retaliated against with interviews

20  and examinations after filing their Federal Tort Claims. As a result of reporting the

21  misconduct, the victims were put in the Solitary Housing Unit (SHU), received

22  daily room tosses, and were placed on lock downs. The victims also had their phone

23  calls and visitations taken away, their legal mail was read, and their legal phone

24  calls were monitored.

25

26

27

28

THE PRIDE
LAW FIRM

PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

# CLAIMS FOR RELIEF

## CLAIM ONE

## EIGHTH AMENDMENT, CRUEL AND UNUSUAL PUNISHMENT – SEXUAL ABUSE

## (KLINGER, PEREZ, GARCIA, and DOES 1-25, inclusive, in their individual capacities)

63.     Plaintiff repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

64.     Plaintiff brings this claim under the Cruel and Unusual Punishment Clause of the Eighth Amendment to the U.S. Constitution against KLINGER, PEREZ, GARCIA, and DOES 1-25, inclusive, in their individual capacities.

65.     At all material times KLINGER, PEREZ, GARCIA, and DOES 1-25, inclusive, were federal employees of the BOP at FCI Dublin, acting under the color of federal authority with respect to the allegations in this complaint.

66.     KLINGER and PEREZ violated Plaintiff's right to be free from cruel and unusual punishment by repeatedly sexually abusing her while she was incarcerated as a minimum-security inmate at FCI Dublin.

67.     KLIGNER and PEREZ's sexual abuse of Plaintiff occurred under coercive circumstances.

68.     By intentionally subjecting Plaintiff to sexual acts, KLINGER and PEREZ acted maliciously, in a manner that is deeply offensive to human dignity and void of any penological justification.

69.     The inhumane conditions of confinement caused by KLIGNER and PEREZ's repeated sexual abuse caused Plaintiff severe physical, mental, and emotional harm.

70.     GARCIA was the during the majority of the period that Plaintiff was being abused by KLINGER and PEREZ. As the warden, GARCIA was responsible for safekeeping, care, protection, discipline, programming, and release of inmates

incarcerated at FCI Dublin. GARCIA was also responsible for hiring, training, and supervising/managing staff, and determining operating procedures and policies.

71.    GARCIA was also sexually abusing wards at FCI Dublin, and in his capacity as warden, thus ratified CHAVEZ's behavior. GARCIA led PREA training and chaired the audit of FCI Dublin under the PREA. Thus, the man responsible for teaching inmates how to report rape was in fact a serial rapist of inmates.

72.    GARCIA accepted guilt for his sexual abuse of other inmates, and GARCIA knew or should have known that CHAVEZ was sexually abusing Plaintiff.

73.    KLINGER, PEREZ, GARCIA, and DOES 1-25, inclusive, acted with malice and oppression, and their conduct constitutes a reckless or callous disregard of Plaintiff's rights, entitling Plaintiff to punitive damages.

74.    Plaintiff seeks the following relief for her injuries: (a) nominal damages resulting from the repeated violations of her personal dignity and from physical injury; (b) non-economic damages consisting of past physical injury, past and future mental pain and suffering, mental anguish, emotional distress, and for offenses to her personal dignity; and (c) punitive damages.

## CLAIM TWO

### GENDER VIOLENCE (Cal. Civ. Code § 52.4)

**(Against KLINGER and PEREZ in their individual capacities)**

75.    Plaintiff repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

76.    Plaintiff brings this claim for gender violence under California Civil Code § 52.4 against KLINGER and PEREZ in their individual capacities.

77.    Under California statute, any person subjected to gender violence may bring a civil action for damages against the responsible party. Gender violence is a form of sex discrimination that includes a physical intrusion or invasion of a sexual nature under coercive conditions.

78.     KLINGER and PEREZ discriminated against Plaintiff based on her female gender when they repeatedly sexually abused her, by physically subjecting her to sexual acts, under the coercive conditions that were present between them.

79.     KLINGER and PEREZ's actions occurred outside the course and scope of their employment. Their actions and judgments in sexually abusing Plaintiff were so far below the acceptable standard of custodial conduct, as exemplified by PREA regulations and BOP policy prohibiting sexual abuse, that they could not have been making a policy judgment in their decision to sexually abuse Plaintiff.

80.     By repeatedly subjecting Plaintiff to sexual acts, KLINGER and PEREZ caused her to suffer physical, mental, and emotional injuries, as well as injuries to her personal dignity.

81.     KLINGER and PEREZ acted with malice and oppression and their conduct constitutes a reckless or callous disregard of Plaintiff's rights, entitling her to punitive damages.

82.     Plaintiff seeks the following relief for her injuries: (a) nominal damages resulting from the repeated violations of her personal dignity and from physical injury; (b) non-economic damages consisting of past physical injury, past and future mental pain and suffering, mental anguish, emotional distress, and for offenses to her personal dignity; and (c) punitive damages.

83.     Plaintiff also seeks attorneys' fees and costs, as expressly authorized by statute.

### CLAIM THREE

### SEXUAL ASSAULT (Cal. Civ. Code § 1708.5)

### (Against KLINGER and PEREZ in their individual capacities)

84.     Plaintiff repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

85.     Plaintiff brings this claim for sexual assault under California Civil Code § 1708.5 against KLINGER and PEREZ in their individual capacities.

86.     KLINGER and PEREZ violated Plaintiff's statutory right to be free from sexual assault by repeatedly sexually abusing her while she was incarcerated as a minimum-security inmate at FCI Dublin.

87.     KLINGER and PEREZ's sexual abuse of Plaintiff occurred under coercive circumstances.

88.     KLINGER and PEREZ's sexual abuse of Plaintiff, an inmate in the custody of their employer, was deeply offensive to her personal dignity, would offend a person of ordinary sensitivity, and was unwarranted by the social usages in prison when the contact was made.

89.     Given the deeply offensive nature of these sexual acts and lack of any possible penological justification for these sexual acts, KLINGER and PEREZ must have subjected Plaintiff to these sexual acts with the intent to cause a harmful or offensive contact with Plaintiff's person.

90.     By intentionally subjecting Plaintiff to sexual acts, KLINGER and PEREZ acted maliciously, in a manner that is deeply offensive to human dignity and void of any penological justification.

91.     KLINGER and PEREZ's actions occurred outside the course and scope of their employment. Their actions and judgment in sexually abusing Plaintiff were so far below the acceptable standard of custodial conduct, as exemplified by PREA regulations and BOP policy prohibiting sexual abuse, that they could not have been making a policy judgment in their decision to sexually abuse Plaintiff.

92.     By repeatedly subjecting Plaintiff to sexual acts, KLINGER and PEREZ caused her to suffer physical, mental, and emotional injuries, as well as injuries to her personal dignity.

93.     KLINGER and PEREZ acted with malice and oppression, and their conduct constitutes a reckless or callous disregard of Plaintiff's rights, entitling her to punitive damages.

94.     Plaintiff seeks the following relief for her injuries: (a) nominal damages resulting from the repeated violations of her personal dignity and from physical injury; (b) non-economic damages consisting of past physical injury, past and future mental pain and suffering, mental anguish, emotional distress, and for offenses to her personal dignity; and (c) punitive damages.

## CLAIM FOUR

### BATTERY (California common law)

### (Against PEREZ in his individual capacity)

95.     Plaintiff repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

96.     Plaintiff brings this claim for battery under California common law against PEREZ in his individual capacity.

97.     PEREZ committed battery against Plaintiff by repeatedly sexually abusing her while she was incarcerated as a minimum-security inmate at FCI Dublin.

98.     PEREZ's sexual abuse of Plaintiff occurred under coercive circumstances.

99.     For these reasons PEREZ's sexual abuse of Plaintiff, an inmate in the custody of his employer, was deeply offensive to her personal dignity, would offend a person of ordinary sensitivity, and was unwarranted by the social usages in prison when the contact was made.

100.    Given the deeply offensive nature of these sexual acts and lack of any possible penological justification for these sexual acts PEREZ must have subjected Plaintiff to these sexual acts with the intent to cause a harmful or offensive contact with Plaintiff's person.

1    101.    By intentionally subjecting Plaintiff to sexual acts, PEREZ acted
2  maliciously in a manner that is deeply offensive to human dignity and void of any
3  penological justification.

4    102.    PEREZ's actions occurred outside the course and scope of his
5  employment. His actions and judgments in sexually abusing Plaintiff were so far
6  below the acceptable standard of custodial conduct, as exemplified by PREA
7  regulations and BOP policy prohibiting sexual abuse, that he could not have been
8  making a policy judgment in his decision to sexually abuse Plaintiff.

9    103.    By repeatedly subjecting Plaintiff to sexual acts, PEREZ caused her to
10  suffer physical, mental, and emotional injuries, as well as injuries to her personal
11  dignity.

12    104.    PEREZ acted with malice and oppression, and his conduct constitutes
13  a reckless or callous disregard of Plaintiff's rights, entitling her to punitive
14  damages.

15    105.    Plaintiff seeks the following relief for her injuries: (a) nominal
16  damages resulting from the repeated violations of her personal dignity and from
17  physical injury; (b) non-economic damages consisting of past physical injury, past
18  and future mental pain and suffering, mental anguish, emotional distress, and for
19  offenses to her personal dignity; and (c) punitive damages.

20                                **CLAIM FIVE**
21              **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
22                          **(California common law)**
23          **(Against KLINGER and PEREZ in their individual capacities)**

24    106.   Plaintiff repeats and incorporates by reference every allegation
25  contained in the preceding paragraphs as if fully set forth herein.

26    107.   Plaintiff brings this claim for intentional infliction of emotional
27  distress under California common law against KLINGER and PEREZ in their
28  individual capacities.

108.   KLINGER and PEREZ engaged in outrageous conduct by repeatedly subjecting Plaintiff to sexual acts while she was incarcerated as an inmate in their employer's custody. KLINGER and PEREZ abused their authority over Plaintiff and their power to affect her interests in a manner that was beyond all bounds of decency and must be regarded as atrocious and utterly intolerable in a civilized society.

109.   KLINGER and PEREZ's sexual abuse caused Plaintiff to suffer, and continue to suffer, severe emotional distress, including fear, depression, and anxiety. This distress was so substantial and enduring that no reasonable person in a civilized society should be expected to endure it.

110.   KLINGER and PEREZ intended to cause Plaintiff this emotional distress because they knew that emotional distress was certain to result from his sexual abuse of an inmate.

111.   KLINGER and PEREZ's actions occurred outside the course and scope of his employment. Their actions and judgments in sexually abusing Plaintiff were so far below the acceptable standard of custodial conduct, as exemplified by PREA regulations and BOP policy prohibiting sexual abuse, that they could not have been making a policy judgment in his decision to sexually abuse Plaintiff.

112.   KLINGER and PEREZ acted with malice and oppression, entitling Plaintiff to punitive damages.

113.   Plaintiff seeks the following relief for her injuries: (a) nominal damages resulting from the repeated violations of her personal dignity and from physical injury; (b) non-economic damages consisting of past physical injury, past and future mental pain and suffering, mental anguish, emotional distress, and for offenses to her personal dignity; and (c) punitive damages.

1

# CLAIM SIX

2

## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

3

### (California common law)

4

**(Against KLINGER and PEREZ in their individual capacities)**

5

114.   Plaintiff repeats and incorporates by reference every allegation

6

contained in the preceding paragraphs as if fully set forth herein.

7

115.   Plaintiff brings this claim for negligent infliction of emotional distress

8

under California common law against KLINGER and PEREZ in their individual

9

capacities.

10

116.   KLINGER and PEREZ had a special and heightened duty of care to

11

Plaintiff as her jailer that required them to protect her against reasonably

12

foreseeable emotional harm, including from sexual abuse. PREA regulations and

13

BOP policy prohibiting sexual abuse confirm this special and heightened duty.

14

117.   Alternatively, KLINGER and PEREZ had a general duty of care with

15

respect to Plaintiff.

16

118.   KLINGER and PEREZ engaged in negligent conduct and in a willful

17

violation of statutory standards. On multiple occasions KLINGER and PEREZ

18

breached their duty of care and the PREA regulations by purposefully and willingly

19

subjecting Plaintiff to sexual acts. KLINGER and PEREZ's breach of their duty of

20

care and willful violations of statutory standards were directed at Plaintiff.

21

119.   By repeatedly subjecting Plaintiff to sexual acts, KLINGER and

22

PEREZ proximately caused her to suffer, and to continue to suffer, serious and

23

severe emotional distress.

24

120.   Plaintiff's emotional reactions are not an abnormal response to her

25

sexual abuse. A reasonable person would be unable to cope with the mental distress

26

caused by being sexually abused by a correctional officer who had a duty to protect

27

her from such abuse. No reasonable person in a civilized society should be expected

28

to endure that kind of mental distress.

THE PRIDE
LAW FIRM

121.   KLINGER and PEREZ's actions occurred outside the course and scope of their employment. Their actions and judgments in sexually abusing Plaintiff were so far below the acceptable standard of custodial conduct, as exemplified by PREA regulations and BOP policy prohibiting sexual abuse, that they could not have been making a policy judgment in their decision to sexually abuse Plaintiff.

122.   KLINGER and PEREZ acted with malice and oppression, and their conduct constitutes a reckless or callous disregard of Plaintiff rights, entitling her to punitive damages.

123.   Plaintiff seeks the following relief for her injuries: (a) nominal damages resulting from the repeated violations of her personal dignity and from physical injury; (b) non-economic damages consisting of past physical injury, past and future mental pain and suffering, mental anguish, emotional distress, and for offenses to her personal dignity; and (c) punitive damages.

## CLAIM SEVEN

## EIGHTH AMENDMENT, DELIBERATE INDIFFERENCE – FAILURE TO PROTECT

**(Against GARCIA and DOES 1-25, inclusive, in their individual capacities)**

124.   Plaintiff repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

125.   Plaintiff brings this claim against GARCIA and DOES 1-25, inclusive, in their individual capacities under the Cruel and Unusual Punishment Clause of the Eighth Amendment to the United States Constitution.

126.   At all material times, GARCIA and DOES 1-25, inclusive, were federal employees, acting under the color of federal authority with respect to the allegations set forth above.

127.   GARCIA and DOES 1-25, inclusive, deprived Plaintiff of her right to be free from cruel and unusual punishment by failing to protect her from a

substantial risk of serious harm from sexual abuse by KLINGER and PEREZ by acting in conscious disregard of that known risk.

128.   GARCIA, as the warden, ratified KLINGER and PEREZ's conduct by engaging in the same or similar acts as KLINGER and PEREZ with other inmates at FCI Dublin. Therefore, GARCIA purposefully denied Plaintiff protection from the known and substantial risk of serious harm of KLINGER and PEREZ's sexual abuse.

129.   Based on his position and behavior in the prison, GARCIA knew or should have known that KLINGER and PEREZ were abusing Plaintiff.

130.    GARCIA and DOES 1-25, inclusive, failed to take immediate action to protect Plaintiff, including by separating her from KLINGER and PEREZ, in violation of 28 C.F.R. § 115.62.

131.   GARCIA and DOES 1-25, inclusive, did not take reasonable, available measures to abate the risk of sexual abuse to Plaintiff, and to guarantee her safety, even though a reasonable officer in the circumstances would have appreciated the obviously high degree of risk involved.

132.   GARCIA and DOES 1-25, inclusive, therefore acted with deliberate indifference to substantial risk of sexual abuse in violation of the Eighth Amendment, subjected Plaintiff to dangerous and debasing conditions of confinement, including sexual abuse, and violated her fundamental rights to safe and humane confinement. This cruel and unusual punishment caused Plaintiff physical, mental, emotional, and constitutional injuries.

133.   GARCIA and DOES 1-25's, inclusive, deliberate indifference was malicious, oppressive, reckless, and callous, entitling Plaintiff to punitive damages.

134.   Plaintiff seeks the following relief for her injuries: (a) nominal damages resulting from the repeated violations of her personal dignity and from physical injury; (b) non-economic damages consisting of past physical injury, past

and future mental pain and suffering, mental anguish, emotional distress, and for offenses to her personal dignity; and (c) punitive damages.

**FEDERAL TORT CLAIMS ACT ADMINISTRATIVE EXHAUSTION**

135.   Claims Eight and Nine, below, are asserted against the United States.

136.   Plaintiff has exhausted these claims against the United States under the FTCA.

137.   Plaintiff submitted a "Claim for Damage Injury, or Death" to the BOP on October 4, 2022, for "permanent injuries, mental anguish, embarrassment, humiliation, pain, distress, and damages" as a PREA victim involving staff at FCI Dublin in the sum of $5,000,000.00.

138.   A true and correct copy of Plaintiff's FTCA claim is attached hereto as **Exhibit A**.

139.   The BOP received her administrative claim on October 4, 2022.

140.    A true and correct copy of the BOP's acknowledgment is attached hereto as **Exhibit B**.

141.    By April 4, 2023, six months after the BOP received Plaintiff's administrative claim, the BOP has neither accepted nor rejected the claims. Pursuant to 28 U.S.C. § 2675(a), Plaintiff elects to consider this failure to act as a final denial of her claim.

**CLAIM EIGHT**

**NEGLIGENCE (FTCA, California common law)**

**(Against the United States)**

142.   Plaintiff repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

143.   Plaintiff brings this claim against the United States under the FTCA based on the actions and/or omissions of KLINGER, PEREZ, GARCIA, and DOES 1-25, inclusive, taken while working at FCI Dublin in their capacity as employees

of the BOP and acting within the scope of their employment, with the permission and consent of the United States.

144.   At all material times, Plaintiff was an inmate in the custody of the BOP, a federal agency of the United States in possession and control of FCI Dublin.

145.   **Duty**. KLINGER, PEREZ, GARCIA, and DOES 1-25, inclusive, had a custodial duty, as well as a mandatory statutory obligation under PREA regulations and BOP policy, to protect inmates incarcerated by the United States from foreseeable harm, including, but not limited to, harm from sexual abuse.

146.   The BOP's Personal Conduct rules for staff disallow any sexual activity with an inmate, and state that an employee may not allow another person to engage in such behavior. It explicitly states that there is no such thing as consensual sex between staff and inmates.

147.   Alternatively, KLINGER, PEREZ, GARCIA, and DOES 1-25, inclusive, had a general duty of care to Plaintiff.

148.   KLINGER and PEREZ's sexual abuse of Plaintiff was reasonably foreseeable to GARCIA because KLINGER and PEREZ's conduct made it obvious he was sexually abusing Plaintiff.

149.   **Breach of duty—inadequate supervision**. GARCIA and DOES 1-25, inclusive, failed to supervise and operate FCI Dublin in a manner that would have prevented KLINGER and PEREZ's ongoing sexual abuse of Plaintiff.

150.   GARCIA and DOES 1-25, inclusive, did not take reasonable, available measures to abate the risk of sexual abuse to Plaintiff, and to guarantee her safety, even though a reasonable administrator would have complied with PREA regulations regarding proper prison operations, including adequately monitoring work programming and correctional officer assignments.

151.   KLINGER and PEREZ's sexual abuse of Plaintiff occurred as the direct and proximate result of the supervisory negligence of GARCIA and DOES 1-25, inclusive.

152.   **Injuries and relief sought**. Plaintiff suffered a physical violation, a violation of her liberty interest in being free from sexual abuse, injury from being denied freedom of movement and programming, and severe mental and emotional anxiety and distress, and will continue to suffer severe mental and emotional anxiety and distress in the future.

153.   Plaintiff seeks the following relief for her injuries: non-economic damages consisting of past physical injury, past and future mental pain and suffering, mental anguish, emotional distress, and for offenses to her personal dignity.

<u>**CLAIM NINE**</u>

**NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

**(FTCA, California law)**

**(Against the United States)**

154.   Plaintiff repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

155.    Plaintiff brings this claim against the United States under the FTCA based on the actions and/or omissions of KLINGER, PEREZ, GARCIA, and DOES 1-25, inclusive, which were taken while working at FCI Dublin in their capacity as employees of the BOP and acting within the scope of their employment, with United States' permission and consent.

156.   At all material times, Plaintiff was an inmate in the custody of the BOP, a federal agency of the United States in possession and control of FCI Dublin.

157.   **Duty**. KLINGER, PEREZ, GARCIA, and DOES 1-25, inclusive, had a custodial duty, as well as a mandatory statutory obligation under PREA regulations and BOP policy, to protect inmates incarcerated by the United States from foreseeable harm, including, but not limited to, harm from sexual abuse.

158.   **Breach of duty—inadequate supervision**. GARCIA failed to supervise and operate FCI Dublin in a manner that would have prevented CHAVEZ's ongoing sexual abuse of Plaintiff.

159.   GARCIA did not take reasonable, available measures to abate the risk of sexual abuse to Plaintiff, and to guarantee her safety, even though a reasonable administrator would have complied with PREA regulations regarding proper prison operations, including adequately monitoring work programming and correctional officer assignments.

160.   KLINGER and PEREZ's sexual abuse of Plaintiff occurred as the direct and proximate result of the supervisory negligence of GARCIA.

161.   **Injuries and relief sought**. The actions and omissions of KLIGER, PEREZ, GARCIA, and DOES 1-25, inclusive, caused Plaintiff to suffer, and continue to suffer, serious and severe emotional distress, including fear, depression, and anxiety, because of being repeatedly sexually abused.

162.   Plaintiff's emotional reaction was not an abnormal response to her sexual abuse. A reasonable person would be unable to cope with the emotional distress caused by being sexually abused by a correctional officer, who had a duty to protect her from such abuse. Plaintiff's distress was of such a substantial and enduring quality that no reasonable person in a civilized society should be expected to endure it.

163.   By reason of the United States' negligent infliction of emotional distress, through the conduct of PEREZ, KLINGER, GARCIA, and DOES 1-25, inclusive, Plaintiff has suffered severe emotional distress, and will continue to suffer severe mental and emotional anxiety and distress.

164.   Plaintiff seeks nominal and compensatory damages for these violations.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a jury trial on all claims so triable.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays that this Court grant the following relief:

    1.    Nominal damages in an amount to be determined at trial;

    2.    Compensatory damages for injuries caused by a violation of her constitutional rights and personal dignity, physical injury, pain, discomfort, fears, anxiety, and other mental and emotional distress suffered by Plaintiff and for similar suffering reasonably certain to be experienced in the future, in an amount to be determined at trial;

    3.    Punitive damages for malice, oppression, and reckless and callous disregard of Plaintiff's rights;

    4.    An award to Plaintiff of reasonable costs; and

    5.    An award to Plaintiff of reasonable attorneys' fees pursuant to 28 U.S.C. § 2678 and Cal. Civ. Code § 52.4; and

    6.    Such other and further relief as the Court may deem fit and proper.

                                                    Respectfully Submitted,

Dated: May 16, 2023                    **THE PRIDE LAW FIRM**

                                                    /s/ Jessica K. Pride
                                                    Jessica K. Pride
                                                    Email: jpride@pridelawfirm.com
                                                    Attorneys for Plaintiff

THE PRIDE
LAW FIRM

PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL